Sylvia DRIGGINS, Plaintiff–Appellee,

v.

CITY OF OKLAHOMA CITY, OKLAHOMA, Defendant–Appellant.

No. 90–6267.

United States Court of Appeals, Tenth Circuit.

Jan. 27, 1992.

Gerald S. Rakes (James G. Hamill, Mun. Counselor, Oklahoma City, Okl., with him on the briefs), Asst. Mun. Counselor, Oklahoma City, Okl., for defendant-appellant.

Richard S. Strauss (Michael Avant–Pybas, Mustang, Okl., on the brief), Hochstadt, Straw & Strauss, Denver, Colo., for plaintiff-appellee.

Before MOORE, and TACHA, Circuit Judges and KANE, District Judge.[*]

TACHA, Circuit Judge.

The appellant, City of Oklahoma City (City), appeals from a jury verdict in favor of the plaintiff, Sylvia Driggins. The jury awarded Driggins $12,500 on her claim pursuant to 42 U.S.C. § 1983 that the City terminated her employment without affording her due process. On appeal, the City argues that the trial judge erred in submitting to the jury the questions of whether Driggins had a protected property interest in her employment and whether she received due process when she was terminated. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse.

## BACKGROUND

Driggins was employed by the City of Oklahoma City for approximately six years prior to April 30, 1986, when she was terminated. She was employed as a Human Resources Specialist in the Human Resources Department. Driggins brought this § 1983 action against the City and claimed she was deprived of her property interest in continued employment without due process in violation of the Fourteenth Amendment.

As a public employee, Driggins is entitled to procedural due process if she can show that she was deprived of a property interest. *Derstein v. Kansas*, 915 F.2d 1410, 1413 (10th Cir.1990) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)), *cert. de-*

*nied*, — U.S. —, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991). In a motion for summary judgment, and again during the trial, Driggins advanced three arguments in support of her claim to a property interest: (1) the city council, with authority from the city charter of the City of Oklahoma City ("city charter"), promulgated personnel policies that gave permanent employees the right to be terminated only for cause; (2) a mutual understanding existed between Driggins and the City that she would be a permanent employee and would be fired only for cause; and (3) Driggins—as an employee of a federally funded Comprehensive Employment & Training Act (CETA) program, 29 U.S.C. §§ 802–992 [1]—had a property interest by virtue of CETA's mandate that participating state and local governments adopt a merit personnel system.

The City maintains that Driggins is an at-will employee because the city charter provides that the city manager shall have exclusive control of personnel and that terminations shall be made by the city manager "solely for the good of the service" or in the "interests of the service." In its summary judgment motion and in its motion for a directed verdict, the City asked the judge to rule that Driggins cannot have a property interest in her employment in light of the express provisions in the city charter.

The City argues that the existence of Driggins's property interest should have been determined by the judge as a matter of law and that the judge erred in submitting the issue to the jury. On appeal, the City asks this court to rule that the existence of a protected property interest in employment is always a matter of law for the judge to decide. The City also argues that the judge, not the jury, should have decided whether the City's termination procedure amounted to a violation of due

---

[*] The Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

1. The CETA program was renamed and replaced by the Job Training Partnership Act, 29

U.S.C. §§ 1501–1791. On appeal, Driggins argues that, even though CETA has been repealed, her property interest created under CETA "is grandfathered and may not be taken away by the City without Due Process."

process. We decline to adopt a broad rule that questions of a property right in employment are always issues of law for the judge. We conclude, however, that in this case the judge erred in allowing the jury to resolve the disputed legal issue of whether Driggins could have a property interest in her employment in light of the provisions of the city charter. Because we conclude that Driggins does not have a protected property interest in her employment, we need not decide whether the City's termination procedure violated due process.

## DISCUSSION

■ The jury instruction transcript reveals that the trial court allowed the jury to decide the legal question of whether a property interest could be created, based on any of the plaintiff's theories, in light of the express provisions of the city charter. The judge twice informed the jury of the City's position "that the city charter operated to negate any employee's property interest in employment with the City." The jury was also instructed that "[i]f it is mutually understood between the public employer and employee that the employee's job will continue indefinitely absent cause to terminate, the employee has a property interest in her job."

The judge told the jury to consider the totality of the circumstances as it determined whether the parties had a mutual understanding. The instructions provided that a mutual understanding can be created by "contract, federal statute, city charter, or personnel policies creating a sufficient expectation of continued employment." The judge also instructed the jury to consider "[o]n the one hand ... Plaintiff's expectations for permanent employment based on the circumstances and the City's personnel policies, while on the other hand weighing the City's claim that the Charter of the City of Oklahoma City gave the City Manager the right to terminate Plaintiff's employment 'in the interest of the service.'"

The jury instructions characterize the City's claim that the city charter deprives the plaintiff of a property interest in her employment as a factual matter for the jury to consider when evaluating whether there was a mutual understanding between the City and the plaintiff. The city charter empowers the city manager to discharge employees such as Driggins in "the interest of the City service," article IV, section 3(d), and "for the good of the service," article III, section 1. We hold that the judge should have determined the legal effect of these city charter provisions before deciding whether to submit to the jury the question of whether a "mutual understanding" existed.

■ The judge should have decided the legal issue of whether, in light of the express provisions of the city charter, a property interest in Driggins's employment could have been created based on any of her three theories. When a district court erroneously submits a question of law to the jury, we employ a de novo standard of review and address the legal question. *Melton v. City of Oklahoma City,* 879 F.2d 706, 726 (10th Cir.1989), *modified on other grounds,* 928 F.2d 920 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 296–97, 116 L.Ed.2d 241 (1991). As a matter of law, we find that Driggins does not have a property interest in her employment with the City.

■ Driggins claims that her right to continued employment with the City constitutes a property interest protected by the Fourteenth Amendment. Such a property interest "exists if state or local law creates 'a sufficient expectancy of continued employment.'" *Campbell v. Mercer,* 926 F.2d 990, 992 (10th Cir.1991) (quoting *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir.1984)). The existence of a property interest is "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *see also Carnes v. Parker,* 922 F.2d 1506, 1509–10 (10th Cir.1991). The "sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *see also Vin-*

*yard,* 728 F.2d at 432. Therefore, we must decide whether the Oklahoma Supreme Court would find a property interest under the facts of this case.

We have previously held that the terms of employment of an Oklahoma City police officer are controlled by the city charter. *Graham v. City of Oklahoma City,* 859 F.2d 142, 146 (10th Cir.1988) (citing *Hall v. O'Keefe,* 617 P.2d 196 (Okla.1980) and *Goodwin v. Oklahoma City,* 199 Okl. 26, 182 P.2d 762 (1947)). As an appointee of the city manager, Driggins's terms of employment in the City's Human Resources Department similarly are controlled by the city charter.

■ Article III, section 1 of the city charter states that "removals and demotions shall be made solely for the good of the service." Based on the Oklahoma Supreme Court's interpretation of similar language, we concluded in *Graham* that "under Oklahoma law, the Oklahoma City Charter is not sufficient to create a legitimate expectation of entitlement to continued employment absent cause for discharge." *Id.* (citing *Hall v. O'Keefe,* 617 P.2d at 198–201).

Driggins argues that her property interest derives not from the language of the charter itself but from personnel policies, adopted by resolution of the city council, that enumerate some of the circumstances in which permanent employees may be discharged. According to trial testimony, the personnel director drafted the personnel policies, sought and received the city manager's approval of the policies, and then presented the new policies to the city council. The city council, by resolution, adopted the personnel policies on March 1, 1983.

Personnel policies, taken alone, might be sufficient to create a property interest. *Graham,* 859 F.2d at 146. In *Graham,* however, we found that "[u]nder Oklahoma law, where certain terms of employee dismissals are explicitly stated in the city charter, the city manager or other city officials are not authorized to alter or otherwise restrict those terms so as to legally bind the city." *Id.* (relying on *Umholtz v. City of Tulsa,* 565 P.2d 15, 22 (Okla.1977)). Driggins fails to persuade us that our interpretation of Oklahoma law in *Graham* should not control. Thus, we hold that "[b]ecause the Oklahoma City charter specifically designates that 'removals and demotions shall be made solely for the good of the service,' " the city council, personnel director or city manager "was not authorized to legally bind the city to any other terms or reasons for dismissal." *Id.*

Driggins insists that the city charter empowers the city council to legally bind the city to terms or reasons for dismissal other than those stated in the city charter.[2] We note that in *Graham* we found that the city charter grants the city manager *"all* power to discipline and discharge city employees." *Id.* (emphasis added).

Even assuming the city charter empowers the city council—by virtue of its responsibility to prescribe rules governing the implementation of the Personnel Service Department—and the personnel director to share the city manager's power to discharge employees, we nonetheless conclude that the city council and personnel director lacked the authority to bind the city to terms or reasons for dismissal contrary to those terms or reasons stated in the city charter. The same article—article III—of the city charter that arguably authorizes the city council and personnel di-

---

2. In support of her argument, Driggins points to three additional sections of the city charter. According to article III, section 1,

Appointments and promotions in the classified service of the City shall be made according to merit and fitness, and removals and demotions shall be made solely for the good of the service. To carry out this purpose, there is hereby created a Personnel Service Department, the head of which shall be the Personnel Director....

In addition, article III, section 4 mandates that the city council "shall, by ordinance or by resolution, as the Council may decide, adopt and prescribe rules and regulations pertaining to the establishment, maintenance and operation of the Personnel Service Department."

Finally, according to article III, section 2, the personnel director's duties "shall be such as shall be prescribed by ordinance or resolution implementing the Personnel Service Department and as prescribed by the City Manager."

rector to remove employees also would authorize the city council and personnel director to make such removals "solely for the good of the service." The Oklahoma Supreme Court, in *Umholtz v. City of Tulsa*, 565 P.2d 15 (Okla.1977), stated that "[m]unicipal officials empowered to perform certain acts, cannot themselves limit their powers by imposing restrictions upon the exercise of their power in such a manner as to effect the legality of their actions." *Id.* at 22. Thus, on these facts, the personnel policies proposed by the personnel director and adopted by the city council cannot limit the specific powers granted under the city charter concerning the terms of employee dismissals. *Id.; Graham*, 859 F.2d at 146; *see also Rains v. City of Stillwater*, 817 P.2d 753, 756 (Okla.Ct.App. 1991). We do not believe that the Oklahoma Supreme Court would find a property interest in continued employment under these circumstances.

■ We now address Driggins's second argument in support of her claim to a property interest. Driggins argues that, even if the city council lacked the authority to limit the reasons for which employees could be discharged, the mere existence of the personnel policies—along with the City's actual practices and customs regarding the termination of employees—gave rise to a mutual understanding that Driggins would only be terminated for cause. "Mutually explicit understandings can create a property interest in continued employment by means of an implied contract." *Vinyard v. King*, 728 F.2d 428, 430 (10th Cir.1984) (citing *Bishop v. Wood*, 426 U.S. 341, 344 & n. 6, 96 S.Ct. 2074, 2077 & n. 6, 48 L.Ed.2d 684 (1976) (citing with approval *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972))). Driggins points to no authority, however, for the proposition that mutually explicit understandings can give rise to a protected property interest where an express city charter provision allows employees to be discharged "solely for the good of the service."

Driggins claims that the "mutual understanding" arose from the actions and written policies of the city council, personnel director, and her supervisors, as well from the beliefs of coworkers concerning the nature of Driggins's employment. Driggins has not demonstrated that any of these people had authority to deviate from the express city charter provision concerning dismissals by limiting the circumstances in which an employee may be discharged. Again, based on the principles announced in *Umholtz*, 565 P.2d at 22, we do not believe the Oklahoma Supreme Court would recognize a property interest in continued employment in these circumstances. We hold, as the Seventh Circuit has held, that " 'mutually explicit understandings' that constitute property interests under the holding of *Perry* [*Perry v. Sindermann*] cannot be based on the representations of government officials who are not authorized to make such representations." *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir.1989) (citations omitted).

■ We now address Driggins's third argument in support of her claim to a property interest. Driggins claims that, as an employee of a federally funded Comprehensive Employment & Training Act (CETA) program, she acquired a property interest by virtue of CETA's mandate that participating state and local governments adopt a merit personnel system. Driggins contends that even if the city charter did not grant authority to the city council to restrict the circumstances in which employees could be terminated, the city council's personnel policies are legally enforceable because the city council promulgated the policies pursuant to CETA's mandate that participating state and local governments adopt a system of personnel administration—a system observing merit principles, including the fair treatment of employees, proper regard for their privacy, and protection of their constitutional rights. Even though CETA, 29 U.S.C. §§ 802–992, was repealed in 1982, Driggins contends that her property interest created by CETA is "grandfathered" and may not be taken away without due process.

Even assuming any rights Driggins acquired while CETA was in effect would be "grandfathered," we hold that Driggins did not acquire a property interest in continued employment by virtue of CETA. To establish a property interest in continued employment, an employee must prove substantive restrictions on an employer's power to discharge the employee. *Blanton v. Housing Auth. of the City of Norman,* 794 P.2d 412, 414–15 (Okla.1990); *Asbill v. Housing Auth. of the Choctaw Nation,* 726 F.2d 1499, 1502 (10th Cir.1984). Driggins has not pointed to any CETA provision, or provision in the regulations implementing CETA, that required participating state and local governments to impose upon themselves substantive restrictions on their powers to discharge employees. "[C]ourts have overwhelmingly held that CETA participants are at-will employees with no property right in continued employment." *Davis v. Mobile Consortium of CETA,* 857 F.2d 737, 741 (11th Cir.1988) (citations omitted); *see also Hayward v. Henderson,* 623 F.2d 596, 597–98 (9th Cir. 1980). Because the CETA regulations did not require Oklahoma City to impose restrictions on its ability to terminate its employees, we find that the city council's personnel policies that attempt to impose such restrictions cannot be enforced under the authority of CETA. Under these circumstances, we do not believe that the Oklahoma Supreme Court would find a protected property interest in Driggins's employment. In summary, we conclude that Driggins has failed, as a matter of law, to establish a property interest in continued employment.

We REVERSE the jury's finding and hold that Driggins has no property interest in her continued employment with the City of Oklahoma City. We also VACATE the district court's award of equitable and injunctive relief to Driggins. Because Driggins is no longer the prevailing party, we VACATE the district court's award of attorney's fees and costs to Driggins.